**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JEFFREY HARTMAN, Individually and On Behalf of All Others Similarly Situated, **PLAINTIFF,** vs. HOME DEPOT U.S.A., INC., **DEFENDANT.** | CASE NO.  4:14-cv-01545 JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

COMES NOW Plaintiff Jeffrey Hartman ("Plaintiff"), individually and on behalf of all others similarly situated, (collectively referred to as "Plaintiff") and brings this action against Defendant Home Depot U.S.A., Inc. ("Defendant" or "Home Depot") by and through Plaintiff's attorneys, to obtain damages, restitution, and injunctive relief for the Class, as defined, below, from Defendant.  Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of their counsel, and the facts that are a matter of public record.

**NATURE OF THE CASE**

1.      This is a consumer class action lawsuit brought by Plaintiff, individually and on behalf of themselves and all others similarly situated (*i.e.*, the "Class Members"), whose personally identifiable information—including, on information and belief, their names, addresses, phone numbers, e-mail addresses, credit and debit card numbers, card expiration dates, and the three-digit security codes located on the backs of their credit and debit cards (collectively referred to as "PII")—entrusted to Defendant Home Depot was stolen by a thief or

thieves while in the possession, custody, and control of Defendant Home Depot.

2.      Defendant Home Depot touts itself as being the world's largest home improvement specialty retailer, with more than 2,200 retail stores in the United States (including Puerto Rico and the U.S. Virgin Islands), Canada, and Mexico. Home Depot's stock is traded on the New York Stock Exchange (NYSE: HD) and is included in the Dow Jones industrial average and Standard & Poor's 500 index.

3.      Home Depot permitted unauthorized access of its customers' PII from April of 2014 to at least September 2, 2014 in its U.S. and Canadian stores.  As a result of Defendant Home Depot's own acts and omissions, Defendant Home Depot's point-of-sale ("POS") system exposed Defendant Home Depot's customers' PII to criminals.  The PII of millions of Home Depot customers was accessed without their knowledge or authorization, including information for millions of debit and credit card accounts (hereinafter referred to as the "Data Breach").

4.      Defendant Home Depot could have prevented the Data Breach.  Defendant Home Depot likely did not comply with the industry-standard PCI Data Security Standard, under which Defendant Home Depot may have prevented, and/or discovered earlier, the POS data breach.

5.      Defendant Home Depot expressly promised to safeguard its customers' PII in accordance with its privacy policy.  Furthermore, despite industry-recognized data-security standards and statutory obligations, Defendant Home Depot did not adhere to industry and/or statutory standards and breached its promise of privacy and security.[1]

6.      Defendant Home Depot compromised the security of Plaintiff's and the Class Members' PII.  Defendant Home Depot also breached its promise to safeguard its customers' PII

---

[1] See, The Home Depot, Inc. Privacy and Security Statement.  Available at:
http://www.homedepot.com/c/Privacy_Security#sec4. Last visited: September 3, 2014.

by intentionally, willfully, recklessly, and/or negligently failing to take necessary and adequate precautions required to prevent and protect Defendant Home Depot's customers' PII from unauthorized access and disclosure.  As a result of Defendant Home Depot's acts and omissions, Plaintiff's and Class Members' PII was improperly collected, handled, and stored, thus resulting in Plaintiff's and Class Members' PII and identities being compromised.

7.     Defendant Home Depot's intentional, willful, reckless, and/or negligent acts and omissions, including Defendant Home Depot's failure to adequately secure Plaintiff's and Class Members' PII, as well as Defendant Home Depot's disregard of Plaintiff's and Class Members' rights, directly and proximately caused a substantial unauthorized disclosure of Plaintiff's and Class Members' PII.

8.     The improper use of Defendant Home Depot's customers' PII by unauthorized third parties can and did result in an adverse impact on, among other things, a victim's credit rating and finances.  The type of wrongful PII disclosure made by Defendant Home Depot is the most harmful because it generally takes a significant amount of time for a victim to become aware of misuse of that PII.

9.     Defendant Home Depot willfully jeopardized millions of its customers' PII and broke its promises and contractual obligations made through its privacy policy. Defendant Home Depot's wrongful acts and omissions also constitute common law negligence.

10.    Defendant Home Depot's wrongful acts or omissions, and the resulting Data Breach, place Plaintiff and Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.  The PII released by Defendant Home Depot already is being bought, sold, and used by criminals, resulting in serious injury Defendant Home Depot's consumers.   Underscoring the danger, Javelin Strategy & Research ("Javelin"), a leading

124588                                    3

provider of quantitative and qualitative research, released a 2012 Identity Fraud Report (the "Javelin Report"), quantifying the impact of data breaches. According to the Javelin Report, individuals whose PII is subject to a reported data breach—such as the Data Breach at issue here—are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft. Moreover, there is a high likelihood that significant identity theft and/or identity fraud has not yet been discovered or reported and a high probability that criminals who now possess Plaintiff's and Class Members' PII have not yet used the information but will do so later, or re-sell it.

11.     The information Defendant Home Depot lost, including Plaintiff's identifying information and other financial information, is extremely valuable to thieves. As the Federal Trade Commission ("FTC") recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."

12.     The FTC recommends acting fast to address identity theft because it recognizes that taking action quickly "can stop an identity thief from doing more damages." The FTC urges prompt action, stating "If you suspect that someone is misusing your personal information, acting quickly is the best way to limit the damage. Additionally, the FTC recognizes that recovering from identity theft is a time-consuming task and involves work for the consumer.

13.     Defendant Home Depot's wrongful conduct was amplified by its failure to provide reasonable and appropriate notice to those affected. Indeed, Defendant Home Depot did not provide notice of a possible Data Breach until after Brian Krebs of Krebs September 2, 2014. On September 2, 2014, after the facts of the data breach became public, Defendant Home Depot finally disclosed a statement disclosing only that there "might" be a "possible payment data

124588                                                                 4

breach":

> **Message to our customers about news reports of a possible payment data breach.**
> We're looking into some unusual activity that might indicate a possible payment data breach and we're working with our banking partners and law enforcement to investigate. We know that this news may be concerning and we apologize for the worry this can create. If we confirm a breach has occurred, we will make sure our customers are notified immediately.
>
> The Home Depot, Online Statement, September 2, 2014. Available at: https://corporate.homedepot.com/MediaCenter/Pages/Statement1.aspx. Last visited September 3, 2014.

14. The aforementioned statement was not one designed to notify affected customers directly. Instead, Defendant Home Depot posted the statement on its *corporate* website (not on the shopping site regularly accessed by customers).

15. On September 8, 2014, Defendant Home Depot issued a press release confirming the data breach.[2]

16. The incidents could have been mitigated or avoided entirely if Defendant Home Depot had put the right controls in place.

### GENERAL

17. On behalf of themselves and Class Members, Plaintiff has standing to bring this lawsuit because (a) Plaintiff purchased goods from Defendant Home Depot, using electronic means of payment, for which a portion of the payment was allocated for the collection, processing, analysis, security, protection, and preservation of Plaintiff's PII; (b) Defendant Home Depot, without Plaintiff's permission, collected and stored large amounts of Plaintiff's PII and

---

[2] See, Press Released dated September 8, 2014. Available at: https://corporate.homedepot.com/MediaCenter/Documents/Press%20Release.pdf. Last viewed: September 9, 2014.

124588                                          5

other personal data for excessive periods of time, without adequate monitoring and security so as to protect Plaintiff's privacy and identity; and (d) Plaintiff was damaged as a direct or proximate result of Defendant Home Depot's wrongful acts and omissions and the resulting Data Breach.

18.     Plaintiff, on behalf of himself and the Class Members, seeks actual damages, economic damages, statutory damages, nominal damages, exemplary damages, injunctive relief, attorneys' fees, litigation expenses and costs of suit.

## PARTIES

19.     Plaintiff Jeffrey Hartman ("Plaintiff" or "Hartman") is an individual citizen of the state of Missouri, residing in the city of Chesterfield.  Plaintiff Hartman used two credit cards at the very least Home Depot on June 16, 2014, July 18, 2014, twice on July 22, 2014, August 5, 2014, and August 28, 2014.

20.     Plaintiff Hartman believed that Defendant would maintain his PII in a reasonably secure manner and provided his PII to Home Depot on that basis.  Had Plaintiff Hartman known that Defendant would not maintain his PII in a reasonably secure manner, he would not have made a purchase at Home Depot using an electronic form of payment.

21.     Defendant Home Depot U.S.A., Inc. d/b/a The Home Depot ("Defendant" or "Home Depot") is a Delaware Corporation with its principal place of business in Atlanta, Georgia.  Defendant Home Depot is the world's-largest home improvement retailer and, as of 2014, is ranked 33rd on the Fortune 500 list of top US companies, by revenue.  Millions of Americans regularly shop at Home Depot.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), in that:

124588                                          6

a.  the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs;

b.  this is a class action involving 100 or more class members; and

c.  this is a class action in which at least one member of the Plaintiff class is a citizen of a State different from at least one Defendant.

23.  This Court has personal jurisdiction over Home Depot U.S.A., Inc. because Home Depot U.S.A., Inc. is authorized to do business in the State of Missouri and operates stores within this Judicial District.

24.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 because many of the acts and transactions giving rise to this action occurred in this District and because Home Depot and is subject to personal jurisdiction in this District.

25.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391, because a substantial part of the events and/or omissions giving rise to Plaintiff's and the Class Members' claims occurred within this District and Defendant Home Depot conducts substantial business in this District.

## FACTS

### The Data Breach

26.  In late-2002 and throughout 2003, Defendant Home Depot installed and utilized a NCR hardware and a modular, Java-based point-of-sale application that was built on top of a framework from 360 Commerce.  During 2003, Defendant Home Depot also introduced a new touchscreen point-of-sale system and cordless scan guns, and installed more than 5,000 miles of cable and 90,000 new devices. Home Depot, Inc. Chairman's Report (March 29, 2004) at page

124588                                         7

2.[3]    New touchscreen point-of-sale terminals, next-generation two-way cordless scan guns, and self-checkout registers were also installed. Id.

27.    According to NCR.com[4], Home Depot reengineered front-end capabilities with the following systems:

- Windows 2000 operating system;

- NCR FastLane self-checkout terminals running Java-based 360Commerce POS software and supporting a GUI-based touchscreen interface;

- NCR 7452; and

- 7456 POS terminals running Java-based 360Commerce POS software and supporting a GUI-based touchscreen interface; and

- Symbol K370 hand-held scanners.

28.    In Fiscal Year 2009, Home Depot equipped 1,977 stores with new servers, 211 stores with new computers, registers, and printers.  The Home Depot, Inc. Annual Report (Form 10K) at 3 (March 25, 2010).

29.    Upon information and belief, in 2010, Home Depot switched from using NCR machines running NCR software to loading Fujitsu software onto those NCR machines. In 2010, Home Depot rolled out mobile POS ("mPOS") to all of its stores.  Home Depot's mPOS devices combine inventory management with payment card acceptance.  Defendant Home Depot completed deployment of FIRST Phones across stores in fiscal 2010, equipping Home Depot associates with devices that are at once portable computers, phones, walkie-talkies and portable

---

[3] Available at Home Depot, Inc. 2003 Annual Report, available at: http://media.corporate-ir.net/media_files/irol/63/63646/annual2003.pdf (last viewed September 9, 2014).

[4] See http://www.salescontrolsystems.com/Grocery/sa_HomeDepot_retailsystems.pdf

124588                                      8

registers that allow customers to check out using debit or credit cards.[5]  At the end of fiscal 2010, Home Depot completed the roll out of Rapid Deployment Centers ("RDCs") and now have 19 RDCs that serve 100% of Defendant Home Depot's U.S. stores.  *Id.*

30.    The management of Defendant Home Depot's POS system includes Defendant Home Depot's administration of Home Depot's customer database, which contains information about each Home Depot customer, including that customer's PII.  Defendant Home Depot collects and stores the PII for extended periods of time, unbeknownst to the customer. Defendant Home Depot uses that information for its own financial gain and targeted marketing campaigns.

31.    Upon information and belief, Home Depot has fully automated management of PCs in retail stores, from initial deployment to ongoing configuration management and support by way of Waltham, Mass.-based On Technology Corp.'s ON Command CCM master server in Atlanta, with remote distribution servers in each store.

32.    The management of Defendant Home Depot's POS system and the administration of its customer database require security.  Defendant Home Depot knew of the need for adequate security measures.   Defendant Home Depot was also motivated, however, to keep costs down.

33.    From late April 2014 to present, and possibly both before and after that period of time, Defendant Home Depot permitted the unauthorized access and disclosure of the PII of millions of Home Depot customers who used their debit or credit cards at one of Defendant Home Depot's retail stores to purchase goods or services.

34.    At the time of a retail transaction for which a customer uses a debit or credit card, Defendant Home Depot collects personal information from its customers, including:

---

[5] 2010 The Home Depot Annual Report (Form 10-K) at 3 (March 24, 2011) – page 3.

**Contact information**
- names and user names of our customers and other visitors
- purchase history
- billing address
- shipping addresses
- phone numbers
- email addresses
- other digital contact information
- information that you provide us about others

**Payment information**
- credit card information
- debit card information
- check information
- PayPal account information
- gift card information
- information related to applications for The Home Depot credit card
- information related to applications for a home improvement loan

**Returns information**
- Information from government issued IDs

**Demographic information**
- Products services a customer likes
- Reviews submitted
- Where you shop
- Age
- Gender

**Location information**
- If one uses Home Depot mobile websites or applications: data obtained from one's mobile device's GPS.
- If one uses Home Depot websites, location data obtained from one's IP address.

**Other information**
If one uses Home Depot websites:
- Browser used
- Pages visited
- Website one came from
- Website visited after one leaves the Home Depot website

35.     Any associate of the Home Depot can access complete sales data on any credit,

debit, or check transaction via a browser-based terminal or POS device.  Defendant Home Depot

compiles and maintains files concerning consumers' financial and credit histories.  Defendant Home Depot regularly engages, in part, in the practice of assembling and/or evaluating consumer credit information or other information.  Defendant Home Depot supplies that information to third-parties, including banks. Defendant Home Depot's collection, maintenance and dissemination of its customers' data, relates, in part, to the customers' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, and is, from time to time, used or expected to be used or collected for the purpose of serving as a factor in establishing eligibility for credit, including Defendant Home Depot's card or home improvement loans.

36.     Defendant Home Depot recognizes that its customers' personal and financial information is highly sensitive and must be protected.  According to Defendant Home Depot's Privacy and Security Statement, "[t]e Home Depot values and respects the privacy of its customers and visitors."  The banner across the webpage provides "Shop with Privacy and Security."

37.     Defendant Home Depot further states that "This Privacy and Security Statement describes the privacy practices of The Home Depot, Inc. and its subsidiaries, divisions, affiliates, brands and other The Home Depot companies ("The Home Depot", "our", or "we").  It applies to our interactions with our customers and visitors, including, but not limited to:

• Use of our websites, including mobile websites
• Visits to our stores or attendance at one of our events
• Use of our applications for mobile phones, tablets or other smart devices
• Phone and email communications
• Social media interactions on our websites and other third party websites like Facebook, YouTube and Twitter
• Viewing our online advertisements or emails

38.     More specifically, Home Depot provides the following examples of when Home

Depot collects information:

We collect information directly from you. The following are a few examples of when we collect information from you:

- During website or survey registration
- In connection with an online or in-store purchase
- If you use an online forum, submit a question or answer to our Product Q & A or provide us with comments or reviews
- If you upload a photo or other digital content through one of our websites or applications
- If you register for a loyalty program or apply for a The Home Depot credit card or a home improvement loan
- If you participate in a sweepstakes, contest, clinic or workshop
- If you rent equipment or vehicles or request warranty or other information
- If you return a product or use a rebate
- If you request we send you an electronic copy of your in-store receipt
- In connection with your interactions with us as a registered user of our websites.  For example, when you use the features of our My Account tool like Express Checkout, Address Book, My Lists, My Project Guides, etc.

39.     Defendant Home Depot acquires the aforesaid data, in part, for a profit-motive purpose. Defendant Home Depot also obtains additional information about its customers from social media sites, for the purpose of specific marketing to specific customers. That information is placed in the customer's account maintained by Defendant Home Depot.

40.     Industry standards require that, as part of its security, Defendant Home Depot monitor its servers for suspicious activity, and specifically monitor its servers for any installation of unauthorized software, commonly referred to as malware.

41.     Upon information and belief, sometime in June 2013, retailers, including Defendant Home Depot, were made aware of malware that can access customers' debit and credit card information, but may not be detected by commonly used security software.

42.     At all relevant times, Defendant Home Depot selected, owned, installed, supplied, operated, managed, maintained, and controlled, equipment and devices, including servers and

computers, for the purpose of processing in-store purchases by customers, including purchases for which customers paid by an electronic method (*i.e.*, credit card or debit card), and including purchases made by Plaintiff and Class Members.

43.     At all relevant times, Defendant Home Depot owed a duty to its customers to see that the in-store checkout lanes and their associated equipment and devices that were required for completing purchases and related transactions in each store were kept in a reasonably safe and secure condition.

44.     At all relevant times, Defendant Home Depot selected, supplied, managed, maintained and controlled certain processes, procedures and services, so as to supply security to customers who shopped at its stores and paid with a debit or credit card—a transaction during which Defendant Home Depot anticipated collecting sensitive personal information about that customer.

45.     Before late April 2014, Defendant Home Depot's POS registers, servers, and their related equipment and devices were compromised. The equipment and devices used to process electronic payments by Home Depot customers were accessed and configured so as to allow for customers' private, personal and financial data to be transmitted for copying and usage not authorized by the customers.

46.     Defendant Home Depot did not acknowledge that the Data Breach affected customers who made credit or debit card purchases in Defendant Home Depot's U.S. stores from late April 2014 to present until September 8, 2014, which was long after Defendant discovered it had a serious Data Breach.  Thus, the size and scope of the Class may be expanded to include breaches and/or data mismanagement that occurred prior to April 2014.

47.     Defendant Home Depot failed to use adequate security measures to identify its

124588                                                13

system vulnerabilities and protect its customers' PII.

48.     Defendant Home Depot permitted widespread and systematic unauthorized access of consumers' PII.  Defendant Home Depot's actions did not meet the industry standards of reasonable and prudent procedures that should be implemented so as to protect consumers' PII, including their credit and debit card information. Defendant Home Depot failed to employ appropriate technical, administrative, or physical procedures to protect consumers' PII from unauthorized capture, dissemination, or misuse, thereby placing its customers at heightened risk for theft and misuse of their financial and personal information, including in the manner undertaken by the offending individual(s) that remain(s) at-large in this case.

49.     When making purchases at Home Depot, Plaintiff and the Class Members paid Defendant Home Depot for, among other things, the items purchased by Plaintiff and the Class Members, as well as for the security and protection of Plaintiff's and the Class Member's PII. Indeed, the retail price of Defendant Home Depot's goods includes the cost associated with Defendant Home Depot's processing of purchases paid with debit and/or credit cards, and also the costs associated with Defendant Home Depot's collection, maintenance, analysis and storage of customers' PII.

50.     Had Plaintiff and the Class Members known of Defendant Home Depot's substandard security procedures and methods of collecting and storing customers' PII, they would have paid substantially less for Defendant Home Depot's goods and services, or would have not paid at all (*i.e.*, Plaintiff and the Class Members would have purchased the same product from a different in-store home improvement retailer).  According to Bloomberg, "Home Depot shares (HD:US) fell 2 percent to $91.15 yesterday, marking the largest one-day decline in

124588                                          14

almost five months, after the company said it was looking into the possible breach.[6]"

51.     In addition, had Plaintiff and Class Members known of Defendant Home Depot's substandard security procedures and methods of collecting and storing customers' PII, Plaintiff and Class Members would have prevented Defendant Home Depot from collecting any more than the minimal information needed to process an electronic payment, would have prevented Defendant Home Depot's storing of such PII particularly for extended periods of time, and/or would have chosen to shop at an alternative retailer.

52.     Because Defendant Home Depot did not sufficiently protect Plaintiff's and Class Members' PII, and instead handled the PII in a manner contrary to industry standards, Plaintiff and Class Members did not receive the entirety of the goods and services for which they paid. Therefore, Plaintiff and Class Members they paid more than they otherwise would have for their purchased items.

53.     In exchange for purchasing goods or services at Defendant Home Depot's retail stores, Plaintiff and Class Members expected Defendant Home Depot to adhere to reasonable and prudent data security measures and industry best practices when collecting and storing their PII.  Because Plaintiff and Class Members were denied their entitled-to protections for which they paid, Plaintiff and Class Members incurred actual monetary damages in that they overpaid for Defendant Home Depot's goods or services when purchasing them with their debit or credit card.

54.     Additionally, as a direct and/or proximate result of Defendant Home Depot's

---

[6] See Home Depot's Suspected Breach Adds Security Pressure.  Matt Townsend and Christ Strohm. Dated September 03, 2014.  Available at: http://www.businessweek.com/news/2014-09-02/home-depot-shares-drop-after-retailer-investigates-data-breach. Last visited: September 4, 2014.

124588                                            15

wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and Class Members have suffered economic damages and other actual harm, including but not limited to identify theft and unauthorized charges.

55.     Plaintiff and Class Members have also suffered damages based on: (a) the opportunity cost and value of time that Plaintiff and Class Members have been forced to expend to monitor their financial and bank accounts as a result of the Data Breach and the delayed notice; (b) the costs associated with obtaining replacement credit and debit cards; and/or (c) the excess consideration paid by Plaintiff and Class Members to Defendant Home Depot for goods and services, a portion of which was designated for the purpose of and express promise by Defendant Home Depot to maintain the security and privacy of Plaintiff's and Class Members' PII.

56.     Defendant Home Depot's wrongful disclosure of and failure to safeguard Plaintiff's and Class Members' PII has also placed them an imminent, immediate, and continuing increased risk of harm for identity theft and identity fraud.  Accordingly, Plaintiff and Class Members have been harmed and remain at an imminent, immediate, and continuing heightened risk of harm.

### Defendant Home Depot Failed to Timely Notify the Class of the Data Breach

57.     Defendant Home Depot aggravated the damage to consumers from the Data Breach by failing to provide adequate and prompt notice.  Consumers were and are entitled to adequate and prompt notification about the Data Breach to help them mitigate the harm and avoid additional instances of fraud as alleged herein. Defendant Home Depot, however, failed to take reasonable steps to notify consumers that their information has been compromised.

58.     In July 2014, the Homeland Security Department and the Secret Service issued a

124588                                          16

report warning retailers to check their in-store cash register systems for a set of malware that could evade detection of antivirus products.   Defendant Home Depot could have taken immediate action to ensure that its consumers' PII would not continue to be available to hackers and identity thieves, for instance by shutting down its POS systems, but Defendant Home Depot chose not to take such action.  Nor did Defendant Home Depot take any action to notify affected consumers at this time.

59.     Defendant Home Depot did not acknowledge that a breach had occurred until September 8, 2014, over four (4) months after the Data Breach purportedly began.   On September 2, 2014,.   On September 2, 2014, when news outlets began reporting a massive security breach at Defendant Home Depot's home improvement stores, Defendant Home Depot only acknowledged that: "We're looking into some unusual activity that might indicate a possible payment data breach and we're working with our banking partners and law enforcement to investigate.  We know that this news may be concerning and we apologize for the worry this can create."  To date, Home Depot has not acknowledged the Data Breach to the public.  The statement was not posted on the front of homedepot.com, but instead was hidden in the corporate website.

60.     Defendant Home Depot has not supplied adequate credit monitoring or identity theft protection assistance to Plaintiff and the Class Members, nor has Defendant Home Depot taken any affirmative steps to make Plaintiff and Class Members whole for the damages arising out of Defendant Home Depot's conduct.

### **Defendant Home Depot Violated the Industry Standards**

61.     Defendant Home Depot accepts customer payment for goods or services made by credit and debit cards issued by members of the Payment Card Industry ("PCI"), such as Visa,

124588                                                17

MasterCard, Discover, and American Express.

62. Some PCI members founded the PCI Security Standards Council ("PCI SSC") which developed a Data Security Standard ("DSS") applicable to all merchants that store, process, or transmit cardholder data. PCI SSC is an open global forum responsible for the development, management, education, and awareness of PCI DSS and related standards for increased security of PIN pad terminals.

63. PCI DSS is intended to:

Build and maintain a secure network; protect cardholder data; ensure the maintenance of vulnerability management programs; implement strong access control measures; regularly monitor and test networks; and ensure the maintenance of information security policies.

64. Defendant Home Depot is contractually obligated to fully comply with all of the PCI DSS requirements and individual PCI members' requirements as a condition of being permitted to process transactions through the PCI members' networks.

65. At all times relevant to this action, Defendant Home Depot held itself out as comporting with PCI DSS and was, therefore, authorized by PCI members to accept credit and debit cards for the payment of personal goods and services.

66. The PCI DSS is an industry standard for large retail institutions that accept credit card and debit card transactions. The standard consists of 12 general requirements:

a) Install and maintain a firewall configuration to protect cardholder data;

b) Do not use vendor-supplied defaults for system passwords and other security parameters;

c) Protect stored cardholder data;

d) Encrypt transmission of cardholder data and sensitive information across public networks;

e) Protect all systems against malware and regularly update anti-virus software or

124588

programs;

      f)      Develop and maintain secure systems and applications;

      g)      Restrict access to cardholder data by business need-to-know;

      h)      Identify and authenticate access to system components;

      i)      Restrict physical access to cardholder data;

      j)      Track and monitor all access to network resources and cardholder data;

      k)      Regularly test security systems and processes; and

      l)      Maintain a policy that addresses information security for all personnel.

67.      The PCI DSS offers a simple approach to protecting sensitive data. The requirements include: protection of stored "cardholder data"; restriction of access to cardholder data; and tracking and monitoring of all access to network resources and cardholder data.

68.      According to the DSS, "cardholder data" includes "[a]t a minimum . . . the full [Primary Account Number]. … plus any of the following: cardholder name, expiration date and/or service code."

69.      PCI SSC also developed even more stringent standards for PIN pad terminals (referred to by the PCI SSC as "PCI PIN Entry Devices" or "PCI PEDs") in order, among other things, to make PIN pad terminals more tamper-resistant.

70.      Since December 31, 2007, PCI members require that merchants who accept their credit or debit cards do not put into service PIN pad terminals that fail to meet the PCI PED standard.

71.      Defendant Home Depot is contractually obligated – as a condition of being permitted to process transactions through PCI companies – to fully comply with the PCI PED requirements and other requirements concerning the security of customer financial information.

124588

72.     Additionally, at all times relevant to this action, Defendant Home Depot was authorized by Visa to accept credit and debit cards for the payment of personal goods and services.

73.     Visa is a privately-held for-profit association that supplies and supports Visa credit and debit cards issued by financial institutions to their customers by providing an authorization service for Visa card transactions and a clearing and settlement service to transfer payment information between parties involved in credit and debit card transactions.

74.     In 2005, Visa issued a global mandate ("Visa's Global Mandate"), requiring that by July 1, 2010, each of its merchants authorized to accept payment through Visa debit and credit cards discontinue the use of PIN pad terminals that do not meet the Triple Data Encryption Standard ("TDES"). TDES compliant devices provide greater security than earlier generation devices. Defendant Home Depot is contractually obligated to fully comply with Visa's Global Mandate as a condition of being permitted to process transactions through the Visa network.

75.     Visa also created operating regulations for merchants who elect to accept its cards, which include a list of thirty-two requirements that those merchants must implement to protect the security of cardholder information (the "PCI PIN Security Requirements").

76.     The PCI PIN Security Requirements, include in pertinent part the following:

- Requirement 1. "All cardholder-entered PINs are processed in equipment that conforms to the requirements for tamper-resistant security modules."

- Requirement 29. "PIN-processing equipment is placed into service only if there is assurance that the equipment has not been substituted or made subject to unauthorized modifications or tampering prior to the loading of cryptographic keys." Visa further notes that, in compliance with international and industry standards, merchants must implement procedures that "***include ensuring that a counterfeit device possessing all the correct operational characteristics plus fraudulent capabilities has not been substituted for a legitimate device***."

- Requirement 32. "Documented procedures exist and are demonstrably in use to

ensure the security and integrity of PIN-processing equipment placed into service, initialized, deployed, used, and decommissioned."

77.     Defendant Home Depot is contractually obligated to fully comply with the PCI PIN Security Requirements as a condition of being permitted to process transactions through the Visa network.

78.     Visa warns that "merchant non-compliance (with the PCI PIN Security Requirements) could potentially subject the Visa payment system to an extremely high level of risk." Similarly, a merchant's non-compliance with the PCI PIN Security Requirements subjects its customers to an extremely high level of risk.

79.     Defendant Home Depot's wrongful actions and/or inaction and the resulting Data Breach have placed Plaintiff and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.

80.     Defendant Home Depot failed to employ sufficiently reasonable safeguards to prevent and/or uncover the Data Breach subject to this Complaint.

## CLASS ALLEGATIONS

81.     **Class Definition**: Plaintiff brings this action pursuant to Fed.R.Civ.P. 23, on behalf of themselves and a Class of similarly situated persons and entities, defined as follows:

> All persons and entities who paid monies to Home Depot using a debit or credit card at one of Home Depot's retail stores in exchange for goods or services, and whose personally identifiable information was accessed through the data breach that Home Depot began investigating on or about September 2, 2014 that started in April of 2014.
>
> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or Defendant's parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the

124588                                        21

Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

82.     **Numerosity**: The exact number of Class Members is unknown to Plaintiff, but reported to be in excess of one million. Undoubtedly, individual joinder in this case is impracticable.   Indeed, news reports indicate the breach is bigger than a previous breach of another retailer that involved the payment cards of 40 million customers.   More than one million class members is sufficient to satisfy numerosity under Fed.R.Civ.P. 23(a)(1).   Class Members can be easily identified through Defendant Home Depot's records and returns data base.

83.     **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiff and Class Members. All of the Class Members' claims are based upon the same facts and circumstances. Fed.R.Civ.P. 23(a)(3). Those common questions predominate over any questions that may affect individual Class Members.   Common questions include, but are not limited to, the following:

a.     Whether Defendant Home Depot adequately safeguarded Plaintiff's and Class Members' PII;

b.     Whether Defendant Home Depot's conduct described herein violated the Federal Stored Communications Act, 18 U.S.C. § 2702, *et seq.*;

c.     Whether Defendant Home Depot's conduct as described herein constitutes violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*;

d.     Whether Defendant Home Depot's conduct as described herein constitutes a violation of federal and/or state laws;

e.     Whether Defendant Home Depot willfully, recklessly, and/or negligently failed to maintain and/or execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and Class Members' PII;

f.     Whether Defendant Home Depot breached its duty to protect Plaintiff and the

124588                                                    22

Class Members by failing to adequately safeguard their PII;

g.     Whether Defendant Home Depot's PII storage and protection protocols were reasonable under industry standards;

h.     Whether implied or express contracts existed between Plaintiff and Class Members and Defendant Home Depot;

i.     Whether Defendant Home Depot's conduct described herein constitutes a breach of contract;

j.     Whether Defendant Home Depot failed to disclose material facts relating to the character and quality of its data security practices;

k.     Whether Plaintiff and Class Members sustained damages as a result of Defendant Home Depot's failure to secure and protect their PII;

l.     Whether Plaintiff and Class Members are entitled to declaratory and injunctive relief; and

m.     Whether Defendant Home Depot violated federal and/or state laws by failing to timely notify Plaintiff and Class Members on an individual basis about the theft and dissemination of their PII.

84.     **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of Class Members, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of Class Members, and Defendant Home Depot has no defenses unique to Plaintiff.

85.     **Appropriateness**: Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable.  Further, it would be virtually impossible for the individual Class Members to obtain effective relief because the damages suffered by individual Class Members are likely to be relatively small when compared to the burden and cost of individually conducting the complex litigation necessitated by Defendant Home Depot's actions.  Even if Class Members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact

that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision by a single court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

**COUNT I – Violation of the Federal**
**Stored Communications Act, 18 U.S.C. § 2702**
**(On Behalf of Plaintiff and the Class)**

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

86.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

87.     The Stored Communications Act ("SCA") contains provisions that provide consumers with redress if a company mishandles their electronically stored information.  The SCA was designed, in relevant part, "to protect individuals' privacy interests in personal and proprietary information."  S. Rep. No. 99-541, at 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555 at 3557.

88.     Section 2702(a)(1) of the SCA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service."  18 U.S.C. § 2702(a)(1).

89.     The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  *Id.* at § 2510(15).

124588                                                        24

90.     Through its payment processing equipment, Defendant Home Depot provides an "electronic communication service to the public" within the meaning of the SCA because it provides consumers at large with credit and debit card payment processing capability that enables them to send or receive wire or electronic communications concerning their private financial information to transaction managers, card companies, or banks.

91.     By failing to take commercially reasonable steps to safeguard sensitive private financial information, even after Defendant Home Depot was aware that customers' PII had been compromised, Defendant Home Depot has knowingly divulged customers' private financial information that was communicated to financial institutions solely for customers' payment verification purposes, while in electronic storage in Defendant Home Depot's payment system.

92.     Section 2702(a)(2)(A) of the SCA provides that "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service."  18 U.S.C. § 2702(a)(2)(A).

93.     The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communication system."  18 U.S.C. § 2711(2).

94.     An "electronic communications systems" is defined by the SCA as "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications."  18 U.S.C. § 2510(4).

124588                                        25

95.     Defendant Home Depot provides remote computing services to the public by virtue of its computer processing services for consumer credit and debit card payments, which are used by customers and carried out by means of an electronic communications system, namely the use of wire, electromagnetic, photooptical or photoelectric facilities for the transmission of wire or electronic communications received from, and on behalf of, the customer concerning customer private financial information.

96.     By failing to take commercially reasonable steps to safeguard sensitive private financial information, Defendant Home Depot has knowingly divulged customers' private financial information that was carried and maintained on Defendant Home Depot's servers solely for the customer's payment verification purposes.

97.     As a result of Defendant Home Depot's conduct described herein and its violations of Sections 2702(a)(1) and (2)(A) of the SCA, Plaintiff and Class Members have suffered actual identity theft, as well as damages in the form of (i) improper disclosure of their PII; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud, and/or the increased risk of identity theft and/or identity fraud; and/or (iv) deprivation of the value of their PII, for which there is a well-established national and international market.  Plaintiff, on their own behalf and on behalf of the Class Members, seek an order awarding themselves and the Class Members the maximum statutory damages available under 18 U.S.C. § 2707, in addition to the cost for 3 years of credit monitoring services.

WHEREFORE, Plaintiff, on their own behalf and on behalf of the Class, pray for an Order against Defendant Home Depot as follows:

124588                                                                          26

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed.R.Civ.P. 23, and certifying the Class defined herein;

B.      Designating Plaintiff as the representative of the Class and undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiff and the Class and against Defendant Home Depot;

D.      Awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and

E.      Granting all such further and other relief as the Court deems just and appropriate.

### COUNT II – Breach of Contract
### (On behalf of Plaintiff and the Class)

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

98.      Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

99.      Plaintiff and Class Members entered into valid and enforceable agreements with Defendant Home Depot whereby Defendant Home Depot promised to provide goods or services to Plaintiff and Class Members, and Plaintiff and Class Members agreed to pay for those goods or services, including payment made with debit or credit cards, and including payment made with Defendant Home Depot's card for which other incentives existed.

100.      A material part of Defendant Home Depot's promise to provide goods or services to Plaintiff and Class Members was to adequately protect their PII, a portion of which was necessarily collected by Defendant Home Depot so as to complete a sales transaction, but much of which was collected and stored for the exclusive benefit of Defendant Home Depot's marketing and economic gain.

124588                                              27

101.    In its privacy policy, Defendant Home Depot expressly promised Plaintiff and Class Members that it would protect Plaintiff's and Class Members' PII.

102.    The contracts required Defendant Home Depot to safeguard Plaintiff's and Class Members' PII to prevent its disclosure and/or unauthorized access.

103.    A meeting of the minds occurred, as Plaintiff and Class Members agreed, *inter alia*, to provide their PII in order to pay Defendant Home Depot in exchange for Defendant Home Depot's agreement to, among other things, protect their PII.

104.    Defendant Home Depot did not protect and safeguard Plaintiff's and the Class Members' PII.

105.    Defendant Home Depot's failure to meet these promises and obligations constitutes an express breach of contract.

106.    Defendant Home Depot breached the contracts by failing to implement sufficient security measures to protect Plaintiff's and the Class Members' PII as described herein.

107.    Defendant Home Depot's failure to fulfill its data security and management promises resulted in Plaintiff and Class Members paying for and receiving goods or services that were of a diminished value. That is, Defendant Home Depot's customers paid for goods at a price that included the costs associated with Defendant Home Depot's promise to supply adequate security and maintain customers' privacy, when in fact Defendant Home Depot neither supplied adequate security nor instituted adequate procedures to maintain customers' privacy.

108.    Stated otherwise, because Plaintiff and Class Members paid for protections that they did not receive—even though such protections were a material part of their contracts with Defendant Home Depot—Plaintiff and Class Members did not receive the full benefit of their bargain.

124588

109.    As a result of Defendant Home Depot's breach, Plaintiff and Class Members suffered damages in the amount of the difference between the price they paid for Defendant Home Depot's goods or services as promised and the actual diminished value of its goods or services.

110.    Additionally, as a result of Defendant Home Depot's breach, Plaintiff and Class Members suffered actual identity theft, as well as damages in the form of (i) improper disclosure of their PII; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud, and/or the increased risk of identity theft and/or identity fraud; and/or (iv) deprivation of the value of their PII, for which there is a well-established national and international market.  These damages were within the contemplation of Defendant Home Depot and the Plaintiff at the time that they contracted.

WHEREFORE, Plaintiff, on their own behalf and on behalf of the Class, pray for an Order against Defendant Home Depot as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed.R.Civ.P. 23, and certifying the Class defined herein;

B.    Designating Plaintiff as the representative of the Class and undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Class and against Defendant Home Depot;

D.    Awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and

E.    Granting all such further and other relief as the Court deems just and appropriate.

### COUNT III – Breach of Implied Contract
**(On Behalf of Plaintiff and the Class)**
**(*Pleaded in the Alternative to Count II*)**

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

111.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

112.    In order to benefit from Defendant Home Depot's services, Plaintiff and Class Members were required to disclose their PII to Defendant Home Depot.

113.    By providing their PII, and upon Defendant Home Depot's acceptance of such information, Plaintiff and Class Members entered into implied contracts with Defendant Home Depot whereby Defendant Home Depot was obligated to take reasonable steps to secure and safeguard that information.

114.    A portion of the services purchased from Defendant Home Depot by Plaintiff and Class Members necessarily included compliance with industry-standard measures with respect to the collection and safeguarding of PII, including their credit card information.  Because Plaintiff and Class Members were denied privacy protections that they paid for and were entitled to receive, Plaintiff and Class Members incurred actual monetary damages in that they overpaid for the products purchased from Defendant Home Depot.

115.    Plaintiff and Class Members have suffered additional injury in fact and actual damages, including monetary losses, arising from unauthorized bank account withdrawals and/or related bank fees charged to their accounts.

116.    Plaintiff and Class Members suffered additional damages arising from the costs associated with identity theft and the increased risk of identity theft caused by Defendant Home Depot's wrongful conduct, particularly given the incidents of actual misappropriation from Class

Members' financial accounts, as detailed above.

117.   Plaintiff and Class Members suffered additional damages based on the opportunity cost and value of time that Plaintiff and Class Members have been forced to expend to monitor their financial and bank accounts as a result of the Data Breach.  Such damages also include the cost of obtaining replacement credit and debit cards.

118.   Plaintiff and Class Members suffered additional damages to the extent Class Members' banks have reduced daily transaction withdrawal limits to protect the banks' own risk.

119.   A meeting of the minds occurred, as Plaintiff and Class Members agreed to provide their PII and to pay Defendant Home Depot in exchange for Defendant Home Depot's agreement to, *inter alia*, provide goods or services and otherwise take reasonable steps to protect Plaintiff's and Class Members' PII.

120.   Without such implied contracts, Plaintiff and Class Members would not have provided their PII to Defendant Home Depot.

121.   As described herein, Defendant Home Depot did not take reasonable steps to safeguard Plaintiff's and Class Members' PII.

122.   Because Defendant Home Depot allowed unauthorized access to Plaintiff's and Class Members' PII, and failed to take reasonable steps to safeguard that information, Defendant Home Depot breached its implied contracts with Plaintiff and Class Members.

123.   As a result of Defendant Home Depot's breach, Plaintiff and Class Members suffered damages in the amount of the difference between the price they paid for Defendant Home Depot's goods or services as promised and the actual diminished value of its goods or services.

124.   Additionally, as a result of Defendant Home Depot's breach, Plaintiff and Class

Members suffered actual identity theft, as well as damages in the form of (i) improper disclosure of their PII; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud, and/or the increased risk of identity theft and/or identity fraud; and/or (iv) and deprivation of the value of their PII, for which there is a well-established national and international market.  These damages were within the contemplation of Defendant Home Depot and the Plaintiff at the time that they contracted.

WHEREFORE, Plaintiff, on their own behalf and on behalf of the Class, pray for an Order against Defendant Home Depot as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in set forth in Fed.R.Civ.P. 23, and certifying the Class defined herein;

B.      Designating Plaintiff as the representative of the Class and undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiff and the Class and against Defendant Home Depot;

D.      Awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and

E.      Granting all such further and other relief as the Court deems just and appropriate.

### COUNT IV – Declaratory Judgment Act
### (On Behalf of Plaintiff and the Class)

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

125.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

126.    The Declaratory Judgment Act ("DJA") states:

124588                                              32

"In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

28 U.S.C. § 2201(a).

127.    In the case at hand, there is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, due to the imminence of harm facing Plaintiff and Class Members.  As set forth above, Class Members have already suffered identity theft and damages as a result of the Data Breach, and the perpetrators are still at large with Class Members' PII.

128.    Plaintiff seeks a declaration that Defendant Home Depot has breached a contract between it and Plaintiff and Class Members by allowing unauthorized third-parties to access personal financial data.

129.    Plaintiff further seeks a declaration that due to the imminence and likelihood of harm to Plaintiff and Class Members, Defendant Home Depot be ordered to pay for mitigation in the form of legitimate and adequate credit monitoring, identity theft protection, and identity theft insurance, and also be ordered to indemnify Plaintiff and Class Members for future harm.

WHEREFORE, Plaintiff, on their own behalf and on behalf of the Class, pray for an Order against Defendant Home Depot as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in set forth in Fed.R.Civ.P. 23, and certifying the Class defined herein;

B.    Designating Plaintiff as the representative of the Class and undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Class and against Defendant Home Depot;

124588                                    33

D.     Entering a declaration that Defendant Home Depot has breached a contract between it and Plaintiff and Class Members by allowing unauthorized third-parties to access personal financial data, and due to the imminence and likelihood of harm to Plaintiff and Class Members, Defendant Home Depot be ordered to pay for mitigation in the form of legitimate and adequate credit monitoring, identity theft protection, and identity theft insurance, and also be ordered to indemnify Plaintiff and Class Members for future harm; and

E.     Granting all such further and other relief as the Court deems just and appropriate.

**COUNT V – Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**
**(*Pleaded in the Alternative to Counts II and III*)**

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

130.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

131.    If the Court finds Plaintiff and the Class Members' contracts with Defendant Home Depot invalid, non-existent, or otherwise unenforceable, Plaintiff and Class Members may be left without any adequate remedy at law.

132.    Plaintiff and Class Members conferred a monetary benefit on Defendant Home Depot in the form of monies paid for goods and services.

133.    Defendant Home Depot appreciates or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

134.    The monies paid for goods and services that Plaintiff and the Class paid to Defendant Home Depot were supposed to be used by Defendant Home Depot, in part, to pay for the costs of data management and security that would, in part, protect customers' privacy and prevent disclosure of customers' PII.

135.    Under principles of equity and good conscience, Defendant Home Depot should

not be permitted to retain the money belonging to Plaintiff and the other members of the Class, because Defendant Home Depot failed to implement data management and security measures that Plaintiff and the Class Members paid for and are otherwise mandated by Defendant Home Depot's privacy policy and industry standards.

136. As a result of Defendant Home Depot's conduct, Plaintiff and the other members of the Class suffered damages in the amount of the difference between the price they paid for Defendant Home Depot's goods or services as promised and the actual diminished value of its goods or services.

WHEREFORE, Plaintiff, on their own behalf and on behalf of the Class, pray for an Order against Defendant Home Depot as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed.R.Civ.P. 23, and certifying the Class defined herein;

B. Designating Plaintiff as the representative of the Class and undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiff and the Class and against Defendant Home Depot;

D. Awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and

E. Granting all such further and other relief as the Court deems just and appropriate.

## COUNT VI – Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

137. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

138.     As custodians and guardians of Plaintiff and Class Members' PII, Defendant Home Depot owed a fiduciary duty to Plaintiff and Class Members to protect their PII.

139.     Defendant Home Depot breached its fiduciary duty to Plaintiff and Class Members by failing to safeguard their PII, as set forth above.

140.     Defendant Home Depot's breach of fiduciary duty resulted in the breach of approximately 110 million Class Members' PII.

141.     As a result of Defendant Home Depot's conduct, Plaintiff and Class Members suffered damages in the amount of the difference between the price they paid for Defendant Home Depot's goods and services as promised and the actual diminished value of its goods and services.

142.     Additionally, as a result of Defendant Home Depot's conduct alleged herein, Plaintiff and Class Members suffered actual identity theft, as well as damages in the form of (i) improper disclosure of their PII; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud, and/or the increased risk of identity theft and/or identity fraud; and/or (iv) deprivation of the value of their PII, for which there is a well-established national and international market.

WHEREFORE, Plaintiff, on their own behalf and on behalf of the, pray for an Order against Defendant Home Depot as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed.R.Civ.P. 23, and certifying the Class defined herein;

B.     Designating Plaintiff as the representative of the Class and undersigned counsel as Class Counsel;

C.     Entering judgment in favor of Plaintiff and the Class and against Defendant Home

124588                                                    36

Depot;

D.    Awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and

E.    Granting all such further and other relief as the Court deems just and appropriate.

### COUNT VII – Negligence
### (On behalf of Plaintiff and the Class)

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

143.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

144.    Defendant Home Depot had a duty to securely maintain, and to not disclose or disseminate, Plaintiff's and the Class Members' PII, pursuant to state statutory and common law.

145.    Defendant Home Depot knew of its legal and statutory obligations concerning the secure maintenance and preservation of Plaintiff's and the Class Members' PII, and of its obligation to prevent the disclosure and dissemination of the aforesaid information.

146.    Defendant Home Depot knew that its security measures to protect against unauthorized and unlawful disclosure and dissemination of PII were inadequate.

147.    Plaintiff and Class Members had a reasonable expectation that Defendant Home Depot would securely maintain, and not disclose or disseminate, their PII.

148.    Defendant Home Depot wrongfully and without authorization, permitted the unlawful and unauthorized access to and disclosure of Plaintiff's and Class Members' PII.

149.    Defendant Home Depot's disclosure and dissemination of the aforesaid information was a violation of Missouri and/or other states' law.

150.    As a result of Defendant Home Depot's acts and omissions, Plaintiff and Class

Members have suffered actual identity theft, as well as damages in the form of (i) improper disclosure of their PII; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud, and/or the increased risk of identity theft and/or identity fraud; and/or (iv) deprivation of the value of their PII, for which there is a well-established national and international market.

WHEREFORE, Plaintiff, on their own behalf and on behalf of the Class, pray for an Order against Defendant Home Depot as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed.R.Civ.P. 23, and certifying the Class defined herein;

B.     Designating Plaintiff as the representative of the Class and undersigned counsel as Class Counsel;

C.     Entering judgment in favor of Plaintiff and the Class and against Defendant Home Depot;

D.     Awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and

E.     Granting all such further and other relief as the Court deems just and appropriate.

## COUNT VIII – Negligence *Per Se*
### (On behalf of Plaintiff and the Class)

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

151.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

152.     Under the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, Defendant Home Depot had a duty to protect and keep sensitive personal information that it obtained from cardholders

124588                                        38

that conducted credit card and debit card transactions at Defendant Home Depot stores secure, private, and confidential.

153.    Defendant Home Depot violated the Gramm-Leach-Bliley Act by: (a) not adequately safeguarding Plaintiff's and the Class Members' sensitive personal information, (b) failing to monitor and ensure compliance with the PCI DSS and its contractual obligations and those accompanying rules and regulations, and (c) failing to follow applicable state law designed to protect cardholder information.

154.    Defendant Home Depot's failure to comply with the PCI DSS, its contractual obligations and those accompanying rules and regulations to accept debit and credit cards, and to follow applicable state law constitutes negligence *per se*.

155.    Additionally, as a result of Defendant Home Depot's conduct alleged herein, Plaintiff and Class Members suffered actual identity theft, as well as damages in the form of (i) improper disclosure of their PII; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud, and/or the increased risk of identity theft and/or identity fraud; and/or (iv) deprivation of the value of their PII, for which there is a well-established national and international market.

WHEREFORE, Plaintiff, on their own behalf and on behalf of the Class, pray for an Order against Defendant Home Depot as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in F.R.C.P. 23, and certifying the Class defined herein;

B.      Designating Plaintiff as the representative of the Class and undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiff and the Class and against Defendant Home

Depot;

D.      Awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and

E.      Granting all such further and other relief as the Court deems just and appropriate.

### COUNT IX – Willful Violation of the Fair Credit Reporting Act
### (On Behalf of Plaintiff and the Class)

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

156.    The Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

157.    The Fair Credit Reporting Act ("FCRA") requires consumer reporting agencies to adopt and maintain procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information in a manner fair and equitable to consumers while maintaining the confidentiality, accuracy, relevancy and proper utilization of such information. 15 U.S.C. § 1681(b).

158.    The FCRA allows for a private right of action against any reporting agency for the negligent or willful violation of any duty imposed under the statute.

159.    The FCRA defines a "consumer reporting agency" as:

Any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

160.    FCRA defines a "consumer report" as:

[A]ny written, oral, or other communication of any information by a consumer reporting

124588                                          40

agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes, or any other purpose authorized under [15 U.S.C. §] 1681(b).

15 U.S.C § 1681a(d).

161.   Defendant Home Depot is a consumer reporting agency as defined under the FCRA because Defendant Home Depot, for monetary fees, regularly engages, in part, in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties and/or uses interstate commerce for the purpose of preparing and/or furnishing consumer reports.

162.   As a consumer reporting agency, Defendant Home Depot was (and continues to be) required to adopt and maintain procedures designed to protect and limit the dissemination of consumer credit, personnel, insurance and other information (such as Plaintiff's and other Class Members' PII) in a manner fair and equitable to consumers, while maintaining the confidentiality, accuracy, relevancy, and proper utilization of such information. Defendant Home Depot, however, violated FCRA by failing to adopt and maintain such protective procedures which, in turn, directly and/or proximately resulted in the theft of Plaintiff's and Class Members' PII and its wrongful dissemination.

163.   On information and belief, Defendant Home Depot knowingly failed to adequately implement these proactive actions to secure and protect Plaintiff's and Class Members' PII and/or put itself in a position to immediately notify Plaintiff and Class Members about the data breach.

164.   As a direct and/or proximate result of Defendant Home Depot's willful and/or

reckless violations of the FCRA as described above, Plaintiff's and Class Members' PII was stolen and made accessible to unauthorized third parties.

165.    As a direct and/or proximate result of Defendant Home Depot's willful and/or reckless violations of the FCRA, as described above, Plaintiff and Class Members were (and continue to be) damaged in the form of, without limitation, expenses for credit monitoring and identity theft insurance, out-of-pocket expenses, anxiety, emotional distress, loss of privacy and other economic and non-economic harm.

166.    Plaintiff and Class Members, therefore, are entitled to compensation for their actual damages including, (i) actual damages resulting from the identity theft; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; (v) anxiety and emotional distress; and/or (vi) statutory damages of not less than $100, and not more than $1000, each, as well as attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C. §1681n(a).

WHEREFORE, Plaintiff, on their own behalf and on behalf of the Class, pray for an Order against Defendant Home Depot as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed.R.Civ.P. 23, and certifying the Class defined herein;

B.    Designating Plaintiff as the representative of the Class and undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Class and against Defendant Home Depot;

D.      Awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and

E.      Granting all such further and other relief as the Court deems just and appropriate.

## COUNT X- Negligent Violation of the Fair Credit Reporting Act
### (On Behalf of Plaintiff and the Class)

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

167.    The Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

168.    In the alternative to Count IX above, Defendant Home Depot negligently violated the FCRA by failing to adopt and maintain procedures designed to protect and limit the dissemination of Plaintiff's and Class Members' PII for the permissible purposes outlined by the FCRA which, in turn, directly and/or proximately resulted in the wrongful dissemination of Plaintiff's and Class Members' PII.

169.    It was reasonably foreseeable that Defendant Home Depot's failure to implement and maintain procedures to protect and secure Plaintiff's and Class Members' PII would result in an unauthorized third party gaining access to their PII for no permissible purpose under the FCRA.

170.    As a direct and/or proximate result of Defendant Home Depot's negligent violations of the FCRA, as described above, Plaintiff's and Class Members' PII was stolen and made accessible to unauthorized third parties in the public domain.

171.    As a direct and/or proximate result of Defendant Home Depot's negligent violations of the FCRA, as described above, Plaintiff and Class Members were (and continue to be) damaged in the form of, without limitation, actual identity theft, expenses for credit

monitoring and identity theft insurance, anxiety, emotional distress, loss of privacy, and other economic and noneconomic harm.

172.    Plaintiff and Class Members, therefore, are entitled to compensation for their actual damages, including, (i) actual damages resulting from the identity theft; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iii) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; (v) anxiety and emotional distress; and/or (viii) attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C.§1681o(a).

WHEREFORE, Plaintiff, on their own behalf and on behalf of the Class, pray for an Order against Defendant Home Depot as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed.R.Civ.P. 23, and certifying the Class defined herein;

B.    Designating Plaintiff as the representative of the Class and undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Class and against Defendant Home Depot;

D.    Awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and

E.    Granting all such further and other relief as the Court deems just and appropriate.

### COUNT XI - Violation of the Consumer Fraud and
### Deceptive Trade Practices Acts of the Various States and District of Columbia
### (On Behalf of Plaintiff and the Class)

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for this Count of Plaintiff's Class Action Complaint against Defendants, states the following:

124588                                                                44

173.   The Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

174.   Plaintiff brings Count XI individually, and on behalf of all similarly situated residents of each of the 50 States and the District of Columbia for violations of the respective statutory consumer protection laws, as follows:

a.   the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq.*

b.   the Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471, *et seq.*;

c.   the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

d.   the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;

e.   the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq.* and 17500 *et seq.*;

f.   the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*;

g.   the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

h.   the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

i.   the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

j.   the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

k.   the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

l.   the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

m.   the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;

n.   the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

o.   the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;

p.   the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*

q.      The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq.*;

r.      the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

s.      the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

t.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

u.      the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

v.      the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq.*;

w.      the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

x.      the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

y.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

z.      the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*
aa.     the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

bb.     the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq.*;

cc.     the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq.*;

dd.     the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*

ee.     the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq.*;

ff.     the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

gg.     the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq.*;

hh.     the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq.*;

ii.     the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq.*;

jj.      the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq.*;

kk.      the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*;

ll.      the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq.*;

mm.      the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*;

nn.      the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

oo.      the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

pp.      the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

qq.      the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

rr.      the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;

ss.      the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

tt.      the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

uu.      the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

vv.      the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

ww.      the Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

xx.      the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq.*;

yy.      the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq.*; and

zz.      the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

175.      Defendant Home Depot violated the consumer fraud statutes set forth above by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiff and Class Members' PII, and by allowing third parties to access Plaintiff's and Class

124588                                                    47

Members' PII.

176.    Defendant Home Depot's acts and/or omissions constitute fraudulent, deceptive, and/or unfair acts or omissions under the consumer fraud statutes set forth above.

177.    Defendant Home Depot knew about the industry standards regarding the protection of customers' PII, and of its contractual obligations to Visa and other PCI members, but failed to follow industry best practices concerning data theft.

178.    Plaintiff and Class Members were deceived by Defendant Home Depot's failure to properly implement adequate, commercially reasonable security measures and industry best practices to protect their PII.

179.    Defendant Home Depot intended for Plaintiff and Class Members to rely on Defendant Home Depot to protect the information furnished to it in connection with their debit and credit card transactions in such manner that the transactions would be protected, secure, and not susceptible to access from unauthorized third parties.

180.    It was foreseeable that Defendant Home Depot's willful failure to handle its customers' PII in a reasonable and adequate manner would put that information at risk of compromise by data thieves, as Defendant Home Depot had knowledge in June 2013 and before that malware could allow third parties to access customer PII.

181.    Defendant Home Depot benefited from mishandling its customers' PII because although Plaintiff and Class Members paid Defendant Home Depot to secure their PII, Defendant Home Depot saved on the cost of implementing those security measures by not taking preventative measures that would have prevented the data from being compromised.

182.    Defendant Home Depot's fraudulent, deceptive, and unfair acts and omissions were intended to entice Plaintiff's and Class Members' to make purchases at its store under the

124588                                                         48

belief their PII was secure and protected when using debit and credit cards to shop at Defendant Home Depot.

183.    Defendant Home Depot's conduct offends public policy and constitutes unfair acts or practices under the consumer fraud statutes set forth above because Defendant Home Depot caused substantial injury to Class Members that is not offset by countervailing benefits to consumers or competition, and is not reasonably avoidable by consumers.

184.    Defendant Home Depot's fraudulent, deceptive, and unfair acts and omissions were employed in the conduct of trade or commerce.

185.    Had Plaintiff and Class Members known of Defendant Home Depot's failure to properly implement adequate, commercially reasonable security measures to protect their private financial information, Plaintiff and Class Members would not have made purchases from Defendant Home Depot using their debit and/or credit cards, or would not have paid the advertised price.

186.    Plaintiff and Class members have suffered injury in fact and actual damages including lost money and property as a result of Defendant Home Depot's violations of the consumer fraud statutes set forth above.

187.    Plaintiff and the other Class members' injuries were proximately caused by Defendant Home Depot's fraudulent and deceptive behavior, which was conducted with reckless indifference toward the rights of others, such that an award of punitive damages is appropriate.

188.    By this conduct, Defendant Home Depot violated the substantive consumer protection and unfair deceptive trade practices acts or statutes of the several States and the District of Columbia, as set forth above, whose laws do not materially differ from that of Missouri, and do not conflict with each other for purposes of this action.

189.    Additionally, despite the disclosure and dissemination of Plaintiff and the Class members' PII having occurred late April 2014 to present, Defendant Home Depot, in violation of states' laws, did not expeditiously and without unreasonable delay notify Plaintiff and the Class Members of the unlawful and unauthorized disclosure and dissemination of their private, personal, and confidential information.

190.    No law enforcement agency determined that earlier notification would have interfered with any criminal investigation, nor was Defendant Home Depot provided with a written request for the delay.

WHEREFORE, Plaintiff, on their own behalf and on behalf of the Class, pray for an Order against Defendant Home Depot as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.    Designating Plaintiff as a representative of the Class, and undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Class and against Defendant Home Depot;

D.    Enjoining Defendant Home Depot's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E.    Mandatorily enjoining Defendant Home Depot to provide adequate credit monitoring, identity theft protection, and identity theft insurance to the Plaintiff and Class Members;

F.    Awarding Plaintiff and the Class restitution and any other equitable relief that may be appropriate;

G.    Awarding Plaintiff and the Class their actual damages, treble damages, punitive damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

H.    Granting all such further and other relief as the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

124588                                    50

Plaintiff hereby demands a jury trial of all claims to the extent authorized by law.

Respectfully Submitted,                    **CAREY, DANIS & LOWE**

DATED: <u>September 9, 2014</u>            By: <u>   /s/ Francis J. "Casey" Flynn, Jr.   </u>
                                                Francis J. "Casey" Flynn, Jr.
                                                *francisflynn@gmail.com*
                                                CAREY, DANIS & LOWE
                                                8235 Forsyth Boulevard, Suite 1100
                                                Saint Louis, Missouri  63105-1643
                                                Telephone: (314) 725-7700
                                                Facsimile: (314) 721-0905

                                                **ATTORNEYS FOR PLAINTIFF
                                                AND THE PROPOSED CLASS**